**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| NICHOLAS A. LANNING,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | CAUSE NO.: 3:25-CV-554-TLS |

**OPINION AND ORDER**

The Plaintiff Nicholas A. Lanning seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) failed to contact the consultative examiner for missing information about the functional limitations of his daily panic attacks. For the reasons below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On January 9, 2023, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on January 1, 2022. AR 10, ECF No. 8. After the claim was denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on April 18, 2024. *Id*. On May 17, 2024, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 10–21. The Plaintiff sought review of the ALJ's decision, and the Appeals Council subsequently denied review. AR 1–6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On June 26, 2025, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C.

§ 405(g). The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 14, 17, 18.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents his from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff did not engage in substantial gainful activity since January 1, 2022. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of depression, generalized anxiety disorder, agoraphobia with panic attacks, and posttraumatic stress disorder. AR 12.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R.

§ 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 12.04, 12.06, and 12.15. AR 13–15.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional interactions with supervisors and coworkers; and no interactions with the general public as part of job tasks/duties.

AR 15.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff was unable to perform any past relevant work. AR 20.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of hand packager, industrial cleaner, and laundry worker. AR 20–21.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758

F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

**ANALYSIS**

In this appeal, the Plaintiff argues that the ALJ failed to provide a good explanation for discounting consultative examining psychologist Dr. Mary M. Kadlec's April 2023 report, which contained her opinion that the Plaintiff would likely get along with his supervisors and coworkers but likely have bouts of anxiety and daily panic attacks. The Court finds the Plaintiff's argument persuasive.

An ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). Therefore, the ALJ must explain how those two factors were considered in making the disability decision. *Id.* § 404.1520c(b)(2). Importantly, "[t]he RFC assessment

must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Here, Dr. Kadlec's report concludes with a "Summary of Mental Status, Diagnostic Impressions, and Medical Source Statement." AR 277–78. In the summary, Dr. Kadlec opines, as is relevant here, the following:

> Mr. Lanning appears to be experiencing symptoms of depression, anxiety and panic attacks. He reports his mother is sick with pleurisy so he has had to do more tasks. He describes depression "really just sit in room watch tv, that about." Motivation "way less", appetite "less, probably less don't eat." He reports "suicidal thoughts, no." When depressed thoughts go really fast. When depressed gets "irritable short and snappy." He reports "no psychiatric hospitalizations". His thought process was goal directed.
>
> He has "had the anxiety since age 15, recently gotten worse, about 5 years have had panic attacks daily". Describes when anxious "body tenses up, feels like vomit, gets dizzy, blurry vision, my body increased heart rate." He reports on the "onset of panic starts to tense up in vehicle will pull over." He reports panic attacks "daily." He feels like "calmer with moderate smoke a lot of dope (Delta 8), and smokes 5 cigars per day, as relaxes throughout the day." He reports, "can't drive on it, end up have a panic driving on it". He reports, "anxiety about medication what will due to me." He reports difficulty leaving his house at times and gets anxious in public place and has had to leave. Worse part about anxiety "the panic attacks."

AR 278. As previously highlighted by the Plaintiff, Dr. Kadlec also opined that the Plaintiff "would likely get along with his supervisors and coworkers, but likely have bouts of anxiety and daily panic attacks." *Id*.

Dr. Kadlec concluded, "In terms of functioning, he is able to complete daily tasks and go to the grocery store and drive (although difficult and sometimes causes anxiety). He has difficulty leaving the house to do social tasks such as riding his bike." *Id*. The Court notes that during his consultative examination, the Plaintiff reported difficulty with driving due to anxiety and that he will pull over if has to do so, if he has a panic attack on his way to work. AR 275. He

also reported that in the past he saw a woman get plowed into by semi and waited a half hour for her body to be cleaned up. *Id*. Also, in the report, Dr. Kadlec included the following diagnoses for the Plaintiff: mild persistent depressive disorder, obsessive compulsive traits, general anxiety disorder with panic specifier, and other personal history of psychological trauma. AR 278.

The ALJ found Dr. Kadlec's opinion "partially persuasive." AR 19. The ALJ explained that the opinion "is from an acceptable medical source that is a specialist in psychology and examined the claimant." *Id*. However, the ALJ criticized Dr. Kadlec for "fail[ing] to offer specific work-related functional limitations in vocationally relevant terms." *Id*. The ALJ also faulted Dr. Kadlec for being "unable to review the other evidence of record, such as the clinical findings of treating sources and the claimant's reported daily activities to treating sources." *Id*. The ALJ reasoned, "[W]hile the claimant displayed mood/affect disturbance, slightly impaired attention/concentration, and some difficulty with memory at the psychological consultative examination, treating source clinical findings show he presents with normal mood/affect, normal attention/concentration, and intact memory." *Id*. (citing Ex. 2F/6–21; Ex. 3F/7–8, 19–20, [21–22], 25–26, 32–33, 35–36, [37–38], 41–42, 48–49, 51–52, 54–55, 63–64, 66–67, 69–70).

The Plaintiff argues that the ALJ was required to seek clarification from Dr. Kadlec if the ALJ thought the report was incomplete or inadequate. This is because 20 C.F.R. § 404.1519p(b) provides, "If the report is inadequate or incomplete, [the ALJ] will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b). Here, by reasoning that Dr. Kadlec failed to offer specific work-related functional limitations in vocationally relevant terms and to review the other evidence of record, the ALJ implied that Dr. Kadlec's report was inadequate or incomplete as to the scope of the

Plaintiff's limitations. As a result, the ALJ had a regulatory duty to contact Dr. Kadlec when she found that her report was incomplete or inadequate. *See id.*; *Kaitlyn C. v. Kijakazi*, No. 1:21-CV-931, 2022 WL 1301753, at *6 (S.D. Ind. May 2, 2022) ("Moreover, the regulations specifically require that, if the ALJ finds the consultative examiner's report to be 'inadequate or incomplete,' the ALJ must 'contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.'" (quoting 20 CFR 416.919p(b))).

Notably, the Defendant does not address the Plaintiff's argument about contacting Dr. Kadlec and the ALJ's regulatory duty to do so. Instead, the Defendant asserts that it is unclear from Dr. Kadlec's report whether Dr. Kadlec was simply noting the Plaintiff's report of daily panic attacks or whether her examination findings were the basis for her opinion. According to the Defendant, a medical opinion needs to be based on independent observations. However, the Seventh Circuit Court of Appeals has concluded that "psychiatric [and psychological] assessments normally are based primarily on what the patient tells the psychiatrist [or psychologist]," so that if the Defendant were correct, "most psychiatric [and psychological] evidence would be totally excluded from social security disability proceedings—a position [the Seventh Circuit] rejected in *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)." *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The reasoning is that the clinician's "professional training and experience would have taught him [or her] how to discount exaggerated statements by his [or her] patients." *Id*. Even if Dr. Kadlec had relied on the Plaintiff's subjective report of his daily panic attacks, that would be "both expected and necessary, not a reason to question [her] professional judgment." *Winkel v. Bisignano*, No. 24-CV-1138, 2025 WL 2048208, at *10 (E.D. Wis. July 22, 2025).

The Defendant also faults Dr. Kadlec for not defining how much time off-task the Plaintiff would be from daily panic attacks. However, that missing information also implies that Dr. Kadlec's report was inadequate or incomplete and is another reason the ALJ had a regulatory duty to contact Dr. Kadlec. *See* 20 C.F.R. § 404.1519p(b). Although the Defendant raises additional arguments about Dr. Kadlec's report, the Court need not address them because none provide a basis for the ALJ ignoring her regulatory duty to contact Dr. Kadlec for the missing information she specified in her reasoning for formulating the RFC.

Accordingly, remand is required for the ALJ to contact Dr. Kadlec regarding the missing information from her report because, as highlighted by the Plaintiff, it could clarify the Plaintiff's functional impact of his panic attacks. *See La'Toya R. v. Bisignano*, No. 1:24-CV-1564, 2025 WL 1413807, at *5 (S.D. Ind. May 15, 2025) ("That 'medical source statement' might have included that of Dr. Simmons if the ALJ applied Section 416.19p and re-contacted him to fully assess La'Toya R.'s functional limitations. This error is not harmless given a proper consultative examination report could have altered how the ALJ considered other evidence . . . ."). Because remand is required on this basis, the Court does not reach the Plaintiff's additional arguments.

**CONCLUSION**

For the above reasons, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 14] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on September 1, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT